# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN W. MULLIS, | : | CIVIL ACTION |
| Plaintiff, | : | No. ____________ |
| v. | : | JURY TRIAL DEMANDED |
| CITY OF READING, OFFICER TANNER J. VOGEL, and OFFICER SHAWN HECK, | : | |
| Defendants. | : | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**(42 U.S.C. § 1983)**

AND NOW, Plaintiff Ryan W. Mullis, by and through his counsel, William R. A. Rush, Esquire, and Rush Law Group, LLC, and Norman M. Valz, Esquire, and Norman M. Valz & Associates, P.C., files this Complaint against Defendants City of Reading, Officer Tanner J. Vogel, and Officer Shawn Heck, and avers as follows:

## INTRODUCTION

1. This civil-rights action arises from a May 1, 2025 police encounter in Reading, Pennsylvania. Plaintiff does not challenge the officers' initial decision to investigate a 911 report that a woman was being tied up near a blue hatchback by two Hispanic males. The constitutional violations occurred after the officers arrived, observed circumstances that did not match the report, recognized that the report was the product of a misunderstanding, and nevertheless continued to detain Plaintiff, used force against him, searched him, and charged him.

2. After the original basis for the investigative detention had dissipated, Defendants Vogel and Heck continued the seizure, threatened detention and transport for live-scan identification, and handcuffed Plaintiff. One of the officers kicked Plaintiff's legs apart and slammed him against a vehicle. Officer Heck then conducted a pat-down search, and a pat-down attributed by the suppression court to departmental policy led to the recovery of an unloaded handgun from Plaintiff's waistband.

3. On February 19, 2026, the Honorable Patrick T. Barrett of the Court of Common Pleas of Berks County granted Plaintiff's suppression motion. In written Findings of Fact and Conclusions of Law, the Court found, among other things, that once the reason for the 911 call was dispelled the detention was no longer necessary; that Plaintiff was performing an emergency headlight repair at approximately 10:00 p.m.; and that the handgun was the product of an unlawful search and must be suppressed.

4. After suppression of the handgun, the Commonwealth acknowledged that it had no evidence to present. On May 27, 2026, Judge Barrett granted habeas corpus relief, dismissed all charges, and discharged Plaintiff.

5. This action seeks damages for the unlawful continued detention, the unreasonable use of force, the unconstitutional search, and the retaliation against Plaintiff for his protected speech, and against the City of Reading for the municipal policies, customs, and training failures that caused the detention and search. Plaintiff also seeks damages for aggravation of pre-existing post-traumatic stress disorder and for loss of employment, subject to proof of causation.

## PARTIES

6. Plaintiff Ryan W. Mullis is an adult individual residing in Mohnton, Berks County, Pennsylvania.

7. Defendant City of Reading (the "City") is a Pennsylvania municipal corporation located in Berks County, Pennsylvania. The City operates, controls, funds, trains, supervises, and establishes policies for the Reading Police Department ("RPD"), and is a "person" subject to suit under 42 U.S.C. § 1983.

8. Defendant Officer Tanner J. Vogel ("Vogel"), badge number 113, was at all relevant times a sworn police officer employed by the City through RPD. Vogel is sued in his individual capacity.

9. Defendant Officer Shawn Heck ("Heck") was at all relevant times a sworn police officer employed by the City through RPD. Heck is sued in his individual capacity.

10. At all relevant times, Vogel and Heck acted under color of state law and within the course and scope of their duties as City police officers.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff asserts claims under 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution, as applied to state and local officers through the Fourteenth Amendment.

12. This Court has supplemental jurisdiction over Plaintiff's related Pennsylvania tort claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as the federal claims.

13. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Reading, Berks County, Pennsylvania, and Defendants reside in or perform their official duties within this District.

## FACTUAL ALLEGATIONS

14. On the evening of May 1, 2025, RPD received a 911 report concerning suspicious activity near South 9th Street and South Street in Reading. The caller reported that a woman was being tied up or hog-tied near a blue hatchback and that two Hispanic males were involved.

15. Because of the seriousness of that report, Officer Vogel responded to the area. Plaintiff does not contend that the officers lacked justification to approach the scene and briefly investigate the reported emergency.

16. Vogel located a blue, older-model Volkswagen hatchback parked along South 9th Street. Plaintiff, a Caucasian male, was standing near the front of the vehicle. Samantha Mullis was seated inside the vehicle.

17. Contrary to the 911 report, Samantha Mullis was not tied up, restrained, injured, distressed, or otherwise in need of police assistance. She appeared calm.

18. Plaintiff did not match the reported description of either of the two Hispanic males, and his clothing did not match the clothing description in the dispatch. The suppression court later found that the dispatch identified two Hispanic males, that Plaintiff is Caucasian, and that only one male was present.

19. Vogel spoke with Samantha Mullis, who provided her name and date of birth. It quickly became apparent to Vogel that the circumstances did not match the original report, and Vogel concluded that the call may have resulted from a misunderstanding.

20. Officer Heck arrived separately as a backup officer and engaged Plaintiff near the front of the Volkswagen.

21. Plaintiff repeatedly declined to identify himself and stated that he did not believe he was required to do so. Plaintiff also questioned the officers' authority to detain him and objected that they had not articulated any lawful basis for the continued encounter.

22. Vogel then approached Plaintiff and also demanded identification. Vogel stated that Plaintiff appeared to be repairing or greasing a vehicle on a public street and asserted that this constituted a violation of City of Reading Ordinance § 576-405.

23. The Volkswagen was not impeding traffic, and the officers had no intention of towing it.

24. Plaintiff was in fact attempting to repair a malfunctioning headlight. Tools and replacement headlight bulbs were present at the scene. Plaintiff and Samantha Mullis were waiting for a pizza delivery while Plaintiff performed the repair.

25. The incident occurred at approximately 10:00 p.m. Driving the vehicle at night without a functioning required headlight would itself violate Pennsylvania motor-vehicle law and create a safety hazard.

26. Although the original 911 report had been dispelled, Vogel told Plaintiff that his continued refusal to identify himself could result in detention and transport for live-scan identification at central processing.

27. After Plaintiff continued to decline identification, Vogel and Heck detained Plaintiff for identification purposes and placed him in handcuffs.

28. At the time Plaintiff was handcuffed, the officers had already determined that Samantha Mullis was not a victim, that Plaintiff did not match the reported suspects, and that the original emergency report was a misunderstanding.

29. After being handcuffed, Plaintiff offered to provide his identification card. One of the officers responded, in substance, that they were "past that now," and Plaintiff remained detained.

30. While Plaintiff was detained, one of the Defendant officers kicked Plaintiff's legs apart and forcibly slammed him against a vehicle. The amount and manner of force were unnecessary and disproportionate to the circumstances of the detention: Plaintiff was already handcuffed, was not suspected of a violent offense, was not fleeing, and posed no identified threat.

31. Both Vogel and Heck participated in the detention, but Plaintiff cannot presently confirm which officer applied the challenged force. Plaintiff alleges the officer's identity in the alternative pending confirmation from body-worn-camera footage, witness testimony, and related records.

32. During the continued detention, Heck conducted a pat-down search of Plaintiff, purportedly for officer safety; Vogel then lifted Plaintiff's shirt and removed a handgun

from his waistband. The suppression court's written findings described the pat-down as "consistent with department policy."

33. The handgun recovered from Plaintiff's waistband was carried in an appendix-carry position and was not in a holster. It was not loaded, no round was chambered, and no ammunition was found on Plaintiff's person. The handgun was not reported stolen.

34. After the handgun was secured, Heck obtained Plaintiff's wallet from his back pocket, and the officers used it to identify Plaintiff. That retrieval occurred before the permit and criminal-history checks described in Vogel's affidavit. Plaintiff's earlier offer to provide identification was not consent to a search of his person, clothing, or pockets.

35. After Plaintiff was identified, law enforcement learned of a prior felony conviction. Vogel, who was the affiant on the Police Criminal Complaint, charged Plaintiff with Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms, 18 Pa.C.S. § 6105(a)(1); Firearms Not to Be Carried Without a License, 18 Pa.C.S. § 6106(a)(1); and Performing Greasing or Repair Work on a Street, City of Reading Ordinance § 576-405.

36. On May 2, 2025, monetary bail was set at $50,000. Plaintiff was unable to post bail and was confined at Berks County Prison.

37. Plaintiff remained incarcerated for approximately two weeks. On May 16, 2025, a professional surety posted the $50,000 bail and Plaintiff was released from custody.

38. On September 16, 2025, Plaintiff, through then-counsel, filed an Omnibus Pretrial Motion seeking suppression of the firearm and other evidence obtained during the detention and search.

39. A suppression hearing was held before Judge Barrett on January 7, 2026. The Commonwealth presented testimony from Vogel and Heck and introduced body-worn-camera evidence. Plaintiff presented no testimony.

40. On February 19, 2026, Judge Barrett entered an Order granting Plaintiff's Motion to Suppress and issued written Findings of Fact and Conclusions of Law.

41. Judge Barrett found that Plaintiff did not match the physical description of the two Hispanic males referenced in the original dispatch, that Samantha Mullis was not tied up or in distress, and that the facts encountered by the officers did not align with the 911 report beyond the presence of a blue hatchback.

42. Judge Barrett concluded that "the reason for the call was dispelled and no one there needed assistance" and, therefore, that "the detention was no longer necessary." The Court also found that the statute permitting a warrantless arrest for a municipal-ordinance violation applies only to cities of the first class, that Philadelphia is the only such city, and that Reading is not a first-class city.

43. Judge Barrett further found that Plaintiff immediately stated on body-worn camera that he was repairing the vehicle because his lights were not working, that the incident occurred at approximately 10:00 p.m., and that the headlight had to be repaired before the vehicle could lawfully be driven.

44. Judge Barrett concluded that Plaintiff was faced with an emergency situation within the meaning of the ordinance and that the handgun recovered during the ensuing search was the product of an unlawful search. The Court suppressed the handgun and precluded the Commonwealth from introducing it at trial.

45. On May 27, 2026, upon motion for habeas corpus relief and the Commonwealth's acknowledgment that there was no evidence to present, Judge Barrett dismissed all charges against Plaintiff and discharged him. The criminal docket was thereafter closed.

46. Before the May 1, 2025 incident, Plaintiff suffered from post-traumatic stress disorder. Plaintiff alleges that the encounter and its aftermath aggravated that pre-existing condition and that he is seeking treatment for the worsened symptoms.

47. Plaintiff further alleges that he lost his employment as a result of the incident and its consequences, causing lost earnings and other economic harm.

48. As a direct and proximate result of the challenged seizure, force, and search, Plaintiff suffered loss of liberty, physical restraint and impact, humiliation, invasion of privacy, emotional distress, aggravation of pre-existing PTSD, lost earnings, and other legally compensable injuries, to the extent caused by each asserted violation.

## COUNT I
## 42 U.S.C. § 1983 — UNLAWFUL CONTINUED DETENTION / FALSE ARREST
## (Against Defendants Vogel and Heck)

49. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

50. The Fourth Amendment protects persons against unreasonable seizures. An investigative detention may continue only while supported by reasonable suspicion and only for so long as is reasonably necessary to confirm or dispel that suspicion; once the suspicion

that justified the stop has been dispelled, continued detention violates the Fourth Amendment.

51. Although the initial 911 report permitted a brief investigation, the facts known to Vogel and Heck quickly dispelled the reported emergency. Samantha Mullis was safe, Plaintiff did not match either reported suspect, and the officers recognized that the call was a misunderstanding.

52. Once the basis for the reported emergency dissipated, Vogel and Heck lacked reasonable suspicion to continue seizing Plaintiff. Plaintiff's refusal to identify himself, standing alone, did not supply reasonable suspicion or probable cause.

53. The purported municipal-ordinance violation did not provide a lawful basis for the continued seizure. Plaintiff was engaged in an emergency headlight repair at night, a circumstance the suppression court found fell within the ordinance's emergency exception, and the ordinance did not authorize a warrantless detention in any event.

54. Vogel and Heck nevertheless continued to detain Plaintiff for the purpose of compelling identification, threatened transport for live-scan identification, and placed him in handcuffs. The continued detention and handcuffing constituted an unreasonable seizure and, to the extent the restraint rose to the level of an arrest, an arrest without probable cause. The later discovery of the handgun and Plaintiff's record could not retroactively justify the earlier restraint.

55. Vogel and Heck each personally participated in the continued detention and handcuffing and thereby caused the violation of Plaintiff's Fourth Amendment rights.

56. As a direct and proximate result, Plaintiff suffered loss of liberty, physical restraint, humiliation, emotional distress, and related injuries.

57. Defendants acted deliberately or with reckless disregard for Plaintiff's rights.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against Defendants Vogel and Heck on Count I, compensatory damages, nominal damages if appropriate, punitive damages against the individual Defendants as permitted by law, reasonable attorney's fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT II**
**42 U.S.C. § 1983 — UNREASONABLE SEARCH**
**(Against Defendants Vogel and Heck)**

58. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

59. A protective frisk under the Fourth Amendment requires specific, articulable facts supporting a reasonable belief that the person detained is armed and presently dangerous. A stop and a frisk are independent actions, each requiring its own justification, and a pat-down may not be conducted automatically, as a matter of routine, or pursuant to department policy.

60. By the time Plaintiff was searched, the original 911 report had been dispelled, the scene was calm, Samantha Mullis was safe, Plaintiff did not match the reported suspects, and the officers had identified no specific, articulable facts supporting a reasonable belief that Plaintiff was armed and presently dangerous.

61. Heck nevertheless conducted a pat-down search of Plaintiff while he was detained and handcuffed for identification purposes, and Vogel lifted Plaintiff's shirt and removed the handgun. The suppression court found that the pat-down was conducted "consistent with department policy" rather than on the basis of individualized reasonable suspicion.

62. Separately, after the handgun was secured, Heck searched Plaintiff's back pocket and removed his wallet to obtain identification. Even if a protective frisk for weapons had been justified, that intrusion exceeded the lawful scope of a weapons frisk and was not authorized by any applicable exception to the warrant requirement.

63. Judge Barrett subsequently held that the handgun recovered during the search was obtained unlawfully and suppressed it.

64. Each Defendant personally participated in the searches described above and thereby violated Plaintiff's Fourth Amendment right to be free from unreasonable searches.

65. As a direct and proximate result, Plaintiff suffered invasion of privacy, physical intrusion, humiliation, emotional distress, and other compensable injury.

66. Defendants acted deliberately or with reckless disregard for Plaintiff's rights.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against Defendants Vogel and Heck on Count II, compensatory damages, nominal damages if appropriate, punitive damages against the individual Defendants as permitted by law, reasonable attorney's fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT III**

**42 U.S.C. § 1983 — EXCESSIVE FORCE**

**(Against Defendants Vogel or Heck, Pleaded in the Alternative)**

67. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

68. The Fourth Amendment protects a person subjected to a seizure from objectively unreasonable force. The reasonableness of force is judged in light of the circumstances confronting the officer, including the severity of the suspected offense, whether the person poses an immediate threat, and whether he is actively resisting or attempting to flee.

69. At a point when the reported emergency had been dispelled and the officers were continuing the encounter solely to compel identification, one of the Defendant officers kicked Plaintiff's legs apart and violently slammed him against a vehicle while he was handcuffed.

70. The force used was excessive and objectively unreasonable in the circumstances: Plaintiff was restrained, was suspected at most of a summary ordinance offense, was not a threat, and was neither resisting nor fleeing. The use of such force was an unreasonable seizure independent of whether the continued detention was otherwise lawful.

71. Plaintiff pleads in the alternative against Vogel and Heck because the identity of the officer who applied the challenged force has not yet been confirmed. Plaintiff seeks liability under this Count only against the individual officer whose personal participation in the use of force is established by the evidence, and does not seek liability based merely on an officer's presence at the scene.

72. As a direct and proximate result, Plaintiff suffered physical impact, pain, humiliation, emotional distress, aggravation of pre-existing PTSD, and other compensable injury.

73. The officer who applied the force acted deliberately or with reckless disregard for Plaintiff's rights.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against the individual Defendant shown to have applied excessive force on Count III, compensatory damages, nominal damages if appropriate, punitive damages against that Defendant as permitted by law, reasonable attorney's fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT IV
## 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION
## (Against Defendants Vogel and Heck)

74. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

75. Plaintiff engaged in activity protected by the First Amendment when he questioned the officers' authority to detain him and verbally objected that they had not articulated any lawful basis for the continued encounter. Verbal criticism of and challenge to police action is protected speech.

76. Both Vogel and Heck heard Plaintiff's questions and objections and personally participated in the continued custodial restraint that followed. Handcuffing and prolonged detention in response to such objections would deter a person of ordinary firmness from engaging in protected expression.

77. Plaintiff alleges that each Defendant's retaliatory animus toward his protected objections was a but-for cause of the challenged escalation and continuation of the detention. The

inference rests on the dispelled dispatch, the known emergency-repair circumstances, the immediate sequence between Plaintiff's objections and the custodial restraint, and the officers' refusal to end the detention even after Plaintiff offered the very identification they claimed to seek.

78. The challenged restraint began before the officers discovered the handgun or learned of Plaintiff's record and, at its inception, was not supported by probable cause for the ordinance offense or any other offense.

79. By using their authority to restrain Plaintiff because of his protected expression, Vogel and Heck violated his First Amendment rights.

80. As a direct and proximate result, Plaintiff suffered loss of liberty, humiliation, emotional distress, and related injury.

81. Defendants acted deliberately or with reckless disregard for Plaintiff's rights. This Count is pleaded as an additional theory to the Fourth Amendment claims, without duplicate recovery.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against Defendants Vogel and Heck on Count IV, compensatory damages, nominal damages if appropriate, punitive damages against the individual Defendants as permitted by law, reasonable attorney's fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT V
## 42 U.S.C. § 1983 — MUNICIPAL LIABILITY UNDER *MONELL*
## (Against Defendant City of Reading)

82. Plaintiff incorporates the preceding paragraphs and the Fourth Amendment violations alleged in Counts I and II as though fully set forth herein. Plaintiff does not seek to hold the City liable merely because it employed Vogel and Heck.

83. Final policymaking authority over RPD's operational policies, training, supervision, and discipline rests with the City's Chief of Police and other City officials vested with that authority under Pennsylvania law and the City's governing ordinances. At the time of the incident, Elias Vazquez served as Chief of Police.

84. **Affirmative policy.** The suppression court found that the pat-down of Plaintiff was conducted "consistent with department policy." That judicial finding reflects, and is evidence of, an RPD policy or practice authorizing officers to conduct a protective "officer-safety" pat-down of a person detained for identification without first identifying specific, articulable facts that the person is armed and presently dangerous.

85. **Custom and practice.** On information and belief, RPD officers engage in a widespread and well-settled practice of (a) prolonging investigative detentions to compel identification after the reasonable suspicion that justified the stop has been dispelled, and (b) conducting protective frisks as a matter of routine rather than on individualized suspicion. The City had actual or constructive notice of the practice through citizen complaints, suppression rulings in criminal cases, and its own supervisory review of officer conduct, and failed to take corrective action, thereby acquiescing in the practice.

86. **Failure to train, supervise, and discipline.** The City failed to adequately train, supervise, and discipline RPD officers concerning (a) the obligation to terminate an investigative detention once reasonable suspicion has dissipated; (b) the constitutional limits on compelling identification and on detention or transport for live-scan processing; (c) the requirement of individualized, articulable facts that a detainee is armed and presently dangerous before a protective frisk; and (d) the lawful scope and emergency exception of City of Reading Ordinance § 576-405. These are recurring situations RPD officers predictably confront, in which the wrong choice will frequently cause the deprivation of constitutional rights; the need for adequate training and supervision was obvious, and the City's failure reflected deliberate indifference.

87. **Ratification.** On information and belief, the City's final policymakers, having authority to review the conduct of Vogel and Heck, approved that conduct and the basis for it — including by treating the pat-down as compliant with department policy and by declining to discipline or retrain the officers after the suppression court found the detention and search unlawful — thereby adopting the officers' conduct as the City's own.

88. The City's policies, customs, and failures to train, supervise, and discipline were each a moving force behind, and bear an affirmative link to, the violations of Plaintiff's Fourth Amendment rights, and directly and proximately caused Plaintiff's injuries.

89. The specific content of the City's written policies, training materials, supervisory practices, and disciplinary and complaint records is peculiarly within the City's possession and control and will be the subject of discovery. Plaintiff pleads on the information presently available, including the suppression court's findings and the officers' conduct in this case, and reserves the right to amend.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against Defendant City of Reading on Count V, compensatory damages, nominal damages if appropriate, reasonable attorney's fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper. Plaintiff does not seek punitive damages against the City.

**COUNT VI**
**FALSE ARREST AND FALSE IMPRISONMENT (PENNSYLVANIA LAW)**
**(Against Defendants Vogel and Heck)**

90. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

91. Vogel and Heck intentionally detained, handcuffed, and confined Plaintiff against his will. Plaintiff was aware of the confinement and did not consent to it.

92. The detention and arrest were unlawful and were not supported by probable cause, as the suppression court's findings confirm.

93. In detaining and arresting Plaintiff without probable cause, Vogel and Heck engaged in willful misconduct within the meaning of 42 Pa.C.S. § 8550 and are not entitled to immunity under the Political Subdivision Tort Claims Act.

94. As a direct and proximate result, Plaintiff suffered loss of liberty, physical restraint, humiliation, emotional distress, and other compensable injuries.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against Defendants Vogel and Heck on Count VI, compensatory and punitive damages as permitted by law, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT VII
## ASSAULT AND BATTERY (PENNSYLVANIA LAW)
## (Against Defendants Vogel and Heck)

95. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

96. Vogel and Heck intentionally subjected Plaintiff to harmful and offensive physical contact without his consent and without legal privilege or justification, including handcuffing him, kicking his legs apart and slamming him against a vehicle, and conducting the pat-down and pocket searches of his person.

97. Because the detention and arrest were unlawful and the force used was unnecessary and excessive, the contact was not privileged and was unreasonable under the circumstances.

98. In using such force against Plaintiff, Vogel and Heck engaged in willful misconduct within the meaning of 42 Pa.C.S. § 8550 and are not entitled to immunity under the Political Subdivision Tort Claims Act.

99. As a direct and proximate result, Plaintiff suffered physical impact and pain, invasion of bodily integrity, humiliation, emotional distress, aggravation of pre-existing PTSD, and other compensable injuries.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against Defendants Vogel and Heck on Count VII, compensatory and punitive damages as permitted by law, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Ryan W. Mullis respectfully requests that this Court enter judgment in his favor and against the applicable Defendants and award:

A. Compensatory damages in an amount determined at trial for loss of liberty, physical restraint and impact, invasion of privacy, humiliation, emotional distress, aggravation of pre-existing PTSD, and other proven harm;

B. Lost earnings, lost employment benefits, related economic loss, and reasonable treatment-related expenses, to the extent proven to have been proximately caused by an actionable violation;

C. Nominal damages for an established constitutional violation where compensatory damages are not proved;

D. Punitive damages against the individual Defendants, and not against the City, to the extent permitted by law;

E. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

F. Pre-judgment and post-judgment interest as permitted by law; and

G. Such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

[Intentionally Blank, Content Continued on Next Page]

Respectfully submitted,

**RUSH LAW GROUP, LLC**

By: /s/ William R. A. Rush

William R. A. Rush, Esquire
PA I.D. No. 209596
38 N. 6th Street, P.O. Box 0758
Reading, PA 19601-0758
Tel. (610) 413-5337
Email: wrush@rushlawberks.com
Counsel for Plaintiff

**NORMAN M. VALZ & ASSOCIATES, P.C.**

By:

Norman M. Valz, Esquire
PA I.D. No. 61338
490 Norristown Road, Suite 150
Blue Bell, PA 19422
Tel: (215) 756-2424
Fax: (215) 827-5758
nvalz@msn.com
Co-Counsel for Plaintiff

Dated: October 26,2026